**TREADWAY COMPANIES, INC., Plaintiff,**

v.

**CARE CORPORATION, Dr. Robert W. Browne, Daniel Cowin, and Philip deJourno, Defendants.**

**CARE CORPORATION, Dr. Robert W. Browne and Philip deJourno, Counterclaim-Plaintiffs,**

v.

**FAIR LANES, INC., Treadway Companies, Inc., Daniel Parke Lieblich, John R. McDonnell, Simon Gluckman, Norman Brassler, Murray L. Cole, Samuel B. Dobrow, and Bernard Mills, Counterclaim-Defendants.**

**CARE CORPORATION and Philip deJourno, suing derivatively in the right and for the benefit of Treadway Companies, Inc., Counterclaim-Plaintiffs,**

v.

**FAIR LANES, INC., Daniel Parke Lieblich, John R. McDonnell, Simon Gluckman, Norman Brassler, Murray L. Cole, Samuel B. Dobrow, and Bernard Mills, Counterclaim-Defendants,**

**and**

**Treadway Companies, Inc., Nominal Defendant.**

No. 79 Civ. 5066 (GLG).

United States District Court, S. D. New York.

Nov. 27, 1979.

See also, D.C., 490 F.Supp. 660, D.C., 490 F.Supp. 668.

Battle, Fowler, Jaffin, Pierce & Kheel, New York City, for plaintiff and the individual counterclaim defendants by Samuel R. Pierce, Jr., Gerald J. Fields, Raymond J. Soffientini, Richard S. Lawch, New York City, of counsel.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for defendants and counterclaim plaintiffs, Care Corporation, Dr. Browne and Philip deJourno by James M. Bergen, Stephen B. Camhi, Daniel S. Greenfeld, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant Cowin by Michael H. Diamond, Douglas M. Kraus, Robert W. Wien, David M. Hashmall, New York City, of counsel.

GOETTEL, District Judge:

In this latest round in the continuing battle for control over Treadway Companies, Inc. ("Treadway"), the defendants and counterclaimants, Care Corporation ("Care"), Browne, and deJourno,[1] have moved for a preliminary injunction seeking to enjoin the proposed sale of certain stock by Treadway to its hoped-for "white knight," Fair Lanes, Inc. ("Fair Lanes").

Care is the owner of approximately 32% of the outstanding common stock of Treadway. In the main action, Treadway has asserted that these shares were acquired in violation of federal securities laws and in violation of fiduciary duties owed to Treadway by Browne and deJourno (who are both "Care" members of the Treadway board of directors), and has alleged that the defendants have engaged in a plan to acquire control over Treadway, utilizing "material, proprietary, confidential, inside and non-public information." (These claims are more fully discussed in this Court's October 12, 1979 decision denying plaintiff's motion for a preliminary injunction. *Treadway Companies, Inc. v. Care Corp.*, No. 79 Civ. 5066 (S.D.N.Y., Oct. 12, 1979)). Expedited discovery as to all claims has been ordered, however, and the Court has attempted to move this action to trial as soon as possible.

Resolution of this dispute has not been left exclusively for the Court, as the parties have continued to maneuver for position in preparation for the upcoming Treadway annual shareholders meeting.[2] In this regard Care, on November 2 filed its latest amended Schedule 13-D with the Securities and Exchange Commission which, modifying its previous more equivocal filing, declared that it had now decided to seek control of Treadway.

Faced with this imminent contest for control with its largest shareholder, Treadway's incumbent management apparently began to look into ways to lessen the likelihood of a Care takeover. On November 5 a proposed transaction was announced whereby Treadway was to sell 240,000 shares of common stock to Fair Lanes as a first step towards "exploring the desirability of a merger" between the two companies. Apparently, however, as a result of certain conditions placed upon this transaction by the American Stock Exchange, including, it seems, a requirement of shareholder approval, that transaction was abandoned.

On November 13 a new proposed sale was presented to the Treadway board of directors. This transaction provided for the sale by Treadway to Fair Lanes of 200,000 shares of newly created Series A Cumulative Voting Preferred Stock, as well as 65,000 shares of authorized but unissued common stock, for the price of $6.50 per share. (All of these shares were to be voting stock.) Under the terms of the sale, the 200,000 shares of preferred stock were to be mandatorily redeemed by Treadway on September 30, 1980. It was provided that, should Treadway default in the payment of the redemption price, the holder of the preferred stock (Fair Lanes) would be given the right to elect a majority of the Treadway directors.

In order to proceed expeditiously with this transaction, the board of directors adopted (with the Care members voting negatively) a number of resolutions. Among them was a resolution which stated that control of Treadway by Care would not be in the best interest of Treadway's shareholders. The board also passed the resolutions necessary to authorize the officers of

---

1. Hereafter, reference in this opinion to Care shall be understood to include Browne and deJourno unless otherwise specified.

2. Care has requested in its moving papers that this Court set a date for the holding of the next annual Treadway shareholders meeting. The Court, however, believing this issue to be one within the province of the New Jersey state courts, and one which would be more appropriately decided by them, declines to do so.

Treadway to enter into an agreement with Fair Lanes "for the sale of stock as a prelude to a merger." On November 15 this Court temporarily restrained the issuance of the new preferred stock if it purported to be stock which could be voted at the next stockholders meeting. Subsequently, on November 19, a stock purchase agreement was entered into between Treadway and Fair Lanes which embodied the terms of the proposed transaction.[3]

It is this transaction, authorized on November 13 and provisionally consummated on November 19, which is the subject of the instant motion. Treadway and its controlling management assert that this sale is a necessary prelude to a potential merger between Treadway and Fair Lanes and as such is a legitimate business transaction, which was entered into only after extensive (commencing on October 19) arm's-length negotiations had been carried out. They claim that a merger with Fair Lanes would be beneficial to Treadway because of the compatibility of their interests and the financial strength of Fair Lanes (especially when compared with that of Care). Moreover, Treadway asserts that the issuance and sale of the stock is a "sine qua non" for any meaningful merger negotiations in view of the fact that Care's present ownership of a 32% interest in Treadway places Care in the position, (under the terms of the applicable New Jersey[4] provision, N.J.Stat. Ann. § 14A:10–3(2), which requires two-thirds shareholder approval of any merger or consolidation), of being able to block any proposed merger. Treadway asserts that only if Care's ownership is diluted, (in this case to 26%) will its shareholders have a meaningful opportunity to consider the relative merits of consolidating with Care or Fair Lanes (which would then have approximately a 16% interest in Treadway).

Treadway maintains that the terms of the agreement it has entered into are in the best interest of its shareholders. It claims that the mandatory redemption provision for the preferred shares was required by Fair Lanes so that Fair Lanes could be assured that it would not find itself in the "untenable position of being a minority shareholder in a corporation controlled by Care" should these merger discussions fall through. In any event, Treadway states that this mandatory redemption provision is not detrimental to the interests of its shareholders, and that the provision does not alter the essential nature of this transaction as a prelude to serious merger negotiations. Finally, Treadway notes that its management has the affirmative duty to oppose the takeover by Care, which it has determined is not in the best interests of Treadway's shareholders.

Defendants, as counterclaimants, strongly dispute these assertions. They claim that the Fair Lanes sale is nothing more than a bogus transaction entered into for the purpose of diminishing the ownership interest of Care, and thereby protecting existing management. They argue that the effect of this proposed transaction is, even more than the original planned sale, to give Fair Lanes an extremely large voting bloc without, and indeed avoiding, shareholder approval. Care contends that Treadway, in its haste to enter into this transaction, has agreed to very unfavorable terms, including (1) giving Fair Lanes the exclusive right, to the exclusion of other potentially more lucrative offers, to hold merger discussions with Treadway, (2) promising to indemnify Fair Lanes should any law suit be commenced in connection with this transaction, (3) agreeing to a low price for the shares sold,[5] and (4) providing for onerous terms

---

3. Paragraph 8.1 of this agreement provides as a condition precedent to the effectiveness of its terms that the temporary restraining order entered into by this Court on November 15 shall have been lifted and that no other temporary restraining order or preliminary or permanent injunction shall have been entered with respect thereto.

4. Treadway is incorporated under the laws of the state of New Jersey.

5. The price per share for the preferred stock under the agreement is the same as that for the common stock even though, in the event of voluntary liquidation, dissolution, distribution of assets, or winding up of Treadway, the preferred shares are to be redeemed at $6.50 per

should there be a default in the mandatory redemption.

Most telling, Care claims, is the structure of the transaction whereby 200,000 newly created and issued preferred shares are to be sold to Fair Lanes to be *mandatorily* redeemed in September, 1980. Care asserts that Treadway is essentially attempting to "park" these shares with Fair Lanes for a short period of time during which, however, the shares will be voted in favor of management. Thus Treadway will have used the issuance of additional shares for the sole purpose of altering the voting structure of the corporation both to get around the voting rights afforded to minority shareholders under New Jersey law (which, as noted, requires two-thirds approval for a merger) and to win the proxy fight. As a result, this transaction, specifically structured so as to avoid the necessity of shareholder approval, only serves the purpose of entrenching current management, to the alleged detriment of Treadway's shareholders, and thus should be enjoined.

Care has, since bringing on this motion for a preliminary injunction, filed an amended counterclaim asserting that the counterclaim defendants,[6] in entering into the proposed transaction with Fair Lanes, have violated: (1) section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder; (2) their fiduciary duties to the shareholders of Treadway (including defendants Care and deJourno); and (3) as against the individual plaintiffs (counterclaim defendants), section 720 of the New York Business Corporation Law, N.Y.Bus. Corp. Law § 720 (McKinney's, 1963 & Supp. 1979).

As indicated above, this Court after hearing argument, entered a temporary restraining order on November 15 enjoining Treadway from "consummating any transaction with Fair Lanes, Inc. involving Se-

ries A Cumulative Voting Preferred Stock whereby Fair Lanes, Inc. would obtain the right to vote such stock at the next annual shareholder meeting of Treadway Companies, Inc." Argument has now been heard on the motion for a preliminary injunction, and the issues are before this Court for determination.

 It is established that corporate management should have and does have the duty to oppose a takeover offer that it has determined would be detrimental to the interests of the corporation or its shareholders. *See Heit v. Baird*, 567 F.2d 1157, 1161 (1st Cir. 1977); *McPhail v. L. S. Starrett Co.*, 257 F.2d 388, 396 (1st Cir. 1958); *Northwest Industries v. B. F. Goodrich Co.*, 301 F.Supp. 706, 712 (N.D.Ill.1969). This broad statement of law, however, does not mean that management has a "blank check" in regard to its response to a takeover bid. Officers and directors of a corporation have a fiduciary duty to treat all shareholders, minority and majority, fairly, and must act in good faith towards them. *See, e. g., Daloisio v. Peninsula Land Co.*, 43 N.J.Super. 79, 127 A.2d 885 (1956); *Schwartz v. Marien*, 37 N.Y.2d 487, 373 N.Y.S.2d 122, 335 N.E.2d 334 (1975). Similarly, management may not, under the guise of opposing what they claim to be an unfavorable takeover attempt, exploit their power and attempt to manipulate the issuance or sale of stock for the purpose of perpetuating their control over the corporation. *See Podesta v. Calumet Industries, Inc.*, Fed.Sec.L.Rep. (CCH) ¶ 96,433 (N.D.Ill. 1978); *Condec Corp. v. Lunkenheimer Co.*, 43 Del.Ch. 353, 230 A.2d 769 (1967); *Schwartz v. Marien, supra*. It is also clear, however, that the issuance of stock for a legitimate business purpose, which also "has the collateral effect of enhancing the power of incumbent management," is not necessarily an improper corporate action. *Heit*

---

share plus accrued dividends prior to any payment being made to the holders of the common stock.

**6.** Named as additional defendants on the counterclaims are Fair Lanes and the seven di-

rectors of Treadway favorable to management. Treadway is a nominal defendant on the amended counterclaim. Fair Lanes, however, as of the time of oral argument of this motion, had not been served with process.

v. *Baird, supra,* 567 F.2d at 1161. *See Klaus v. Hi-Shear Corp.,* 528 F.2d 225 (9th Cir. 1975).

Under the terms of the sale agreement, Treadway is to sell to Fair Lanes 65,000 shares of common stock and 200,000 shares of newly created and issued preferred stock, which is to be mandatorily redeemed in September 1980. In *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341 (2d Cir. 1973), *rev'd on other grounds,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), the court held valid the sale by a target corporation of 300,000 shares of its authorized but unissued common stock to a third party even though the sale agreement contained a "put" whereby the stock could be returned within six months. Treadway asserts that its transaction falls within the ambit of the *Chris-Craft* decision; Treadway argues that the issuance of the shares to Fair Lanes was for a legitimate business purpose, as a prelude to a possible merger, and was a necessary preliminary step by the parties, since "any negotiations concerning merger [were believed] to be pointless absent the issuance of sufficient stock to offset Care's position." Affidavit of Daniel Parke Lieblich in Opposition to Motion For a Preliminary Injunction, at 5. Moreover, Treadway notes that, to the extent that this transaction serves to dilute Care's voting power, Care is entitled to no preemptive rights, *see* N.J.Stat. Ann. § 14A:5–29(1), and is on notice that the board of Treadway was empowered to issue authorized but unissued shares of common and was also authorized to issue shares of preferred. *See, e. g., McPhail v. L. S. Starrett Co., supra,* 257 F.2d at 394–95.

■ It is clear that a transaction entered into as a prelude to a merger is likely to be for a legitimate business purpose, and that shares may be issued in furtherance of such a purpose. In addition, the Court is aware that even a transaction carried out at the "eleventh hour," which effectively blocks a takeover attempt, but which also serves to further a valid purpose, may be permissible. *See Heit v. Baird, supra; Klaus v. Hi-Shear Corp., supra.* Nevertheless, the Court is troubled by the instant transaction between Treadway and Fair Lanes. This transaction was negotiated in haste, with talks commencing only after this Court denied Treadway's motion for a preliminary injunction on October 12. *See, e. g., Elliott v. Baker,* 194 Mass. 518, 80 N.E. 450, 452 (1907) ("such haste does not commonly characterize square business dealings"). The terms of the agreement seem to be less than advantageous to Treadway and its shareholders, with certain terms (*i. e.,* the provision granting Fair Lanes the exclusive right to negotiate a merger and the provision calling for onerous default terms) seeming particularly detrimental. Treadway structured this agreement so as to avoid shareholder scrutiny, and specifically chose to withdraw their first proposed transaction rather than allow it to be put to a shareholder vote. In addition, the Court believes that, at least to some extent, Treadway's management was motivated by a personal animosity towards Care and by "what despicable people they were" (transcript of deposition of Daniel Parke Lieblich at 97) rather than by a desire to make rational and impartial business decisions.

■ Nevertheless, in view of the wide latitude afforded to the business judgment of management, the Court would still hesitate to find that there has been any breach of fiduciary duty by Treadway's management towards its shareholders, and thus would hesitate to consider enjoining any part of this transaction were it not for the manner in which this agreement has been structured. Putting aside questions as to the 65,000 shares of authorized but unissued common stock, which are being sold to Fair Lanes without recourse, and which Care should have been aware might be issued, thereby diluting its interest, *see McPhail v. L. S. Starrett Co., supra,* the Court finds serious problems with the "sale" of the 200,000 shares of preferred. This stock, which has been created and issued solely for the purpose of this transaction, is to be *mandatorily* redeemed on September 30, 1980. Thus, the sale of this stock seems, unlike that in *Chris-Craft,* more like a secured loan than a preliminary step towards a merger.

Yet, during the period of this hastily arranged "loan," the provisional owner of this stock, Fair Lanes, will be able to vote these shares and thus may play a critical part in determining the future of this corporation, concerning which it has individual interests not necessarily common to other stockholders. Treadway asserts that the issuance of these shares is necessary for the legitimate purpose of diluting Care's "blocking position" in regard to a potential merger. Yet this "blocking position" is explicitly afforded to minority shareholders under New Jersey law, for the purpose of protecting minority shareholders who control at least a one-third interest in a corporation from being forced to acquiesce in a merger of which they do not approve. It would be highly inappropriate to allow this statutory provision, which is intended to protect the minority from unfair domination by the controlling interests, to be easily and completely circumvented by a simple act of management, without any form of shareholder consideration, creating and issuing a new class of voting stock for the *stated purpose* of diluting the minority interest. This, however, would be the effect of Treadway's proposed action.

In addition to—and, in fact, more important than—its effect on any eventual merger vote, the issuance and voting of this "temporary" preferred stock will likely have a substantial, if not decisive, impact in the upcoming proxy fight. In light of the serious questions that exist as to the basic motivation for this transaction and the propriety of the stated reason for the issuance of the stock, which raise serious questions as to whether the management of Treadway has violated its fiduciary duty to the shareholders, the Court has grave doubts as to whether this stock should be allowed to be voted. *See Podesta v. Calumet Industries, Inc., supra; Condec Corp. v. Lunkenheimer Co., supra.* This being so, the Court must consider whether preliminary injunctive relief should be granted.

In order for this Court to grant preliminary injunctive relief there must be a showing of:

> (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). *Accord, KMW International v. Chase Manhattan Bank*, 606 F.2d 10 at 14 (2d Cir. 1979); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir. 1979).

Should the Treadway-Fair Lanes transaction be consummated and the Fair Lanes shares thereafter be voted at the next shareholder meeting, Care (and perhaps other stockholders) would suffer irreparable harm. Similarly, given the doubts and questions that we have expressed as to the propriety of at least a part of this transaction, Care has demonstrated a likelihood of success on the merits.[7] Accordingly, injunctive relief is appropriate.

In fashioning the appropriate relief, the Court notes that, while questions exist in regard to the entire agreement between Fair Lanes and Treadway, the most serious questions arise as to the 200,000 shares of newly created preferred, more particularly as to the voting of these shares. Accordingly, the injunctive relief to be afforded will be limited to those shares and will not affect the sale of the 65,000 shares of authorized but unissued common stock, which is to be sold without recourse.

The defendants' and counterclaim plaintiffs' motion for a preliminary injunction is hereby granted to the extent that Treadway is enjoined from selling any shares of Series A Cumulative Voting Preferred Stock to Fair Lanes whereby Fair Lanes would obtain the right to vote such stock at

---

**7.** To the extent that Care will be able to establish the requisite facts to prove that the counterclaim defendants have violated their fiduciary duty to the shareholders of Treadway, such proof and the fact that such conduct was not disclosed to the shareholders may be sufficient to establish that there has also been a violation by Treadway of section 10(b) of the Securities Exchange Act of 1934, and of Rule 10b 5 promulgated thereunder.

the next annual shareholder meeting of Treadway.[8]

SO ORDERED.

---

8. The Court once again stresses its desire that the duration of this injunction should be short and that all of various claims and counter-claims should be resolved as soon as possible at a trial on the merits.