**178**

Milton PARNESS, Plaintiff,

v.

Daniel Parke LIEBLICH, John R. McDonnell, Simon Gluckman, Norman Brassler, Murray L. Cole, Samuel B. Dobrow, Bernard Mills, Fair Lanes, Inc. and Treadway Companies, Inc., Defendants.

No. 80 Civ. 2261 (GLG).

United States District Court,
S. D. New York.

May 5, 1981.

Stull, Stull & Brody, New York City, for plaintiff by Richard J. Stull, New York City, of counsel.

Danziger, Bangser, Klipstein, Goldsmith & Greenwald, New York City, for defendants Brassler and McDonnell by Robert M. Blum, Thomas R. Berner, Jonathan J. Fink, New York City, of counsel.

Battle, Fowler, Jaffin, Pierce & Kheel, New York City, for defendants Lieblich, Cole and Treadway Companies, Inc. by Gerald J. Fields, Raymond J. Soffientini, William Bruce Johnson, New York City, of counsel.

Schulte, Roth & Zabel, New York City, for defendant Fair Lanes, Inc. by David M. Brodsky, Aegis J. Frumento, New York City, of counsel.

OPINION

GOETTEL, District Judge:

This action was brought as a putative class action in the wake of the Treadway Companies' merger/takeover action. *See Treadway Companies, Inc. v. Care Corp.*, [1979–1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,139 (S.D.N.Y. Oct. 12, 1979); 490 F.Supp. 653 (S.D.N.Y.1979); 490 F.Supp. 660 (S.D.N.Y.1980); 490 F.Supp. 668 (S.D.N.Y.1980), *aff'd in part, rev'd in part*, 638 F.2d 357 (2d Cir. 1980). Unfortunately for this plaintiff, the course of the litigation and the subsequent events has been very erratic, with the result that the plaintiff now seeks to file a second amended complaint (in his second action), while the defendants seek complete dismissal of the action. To understand the present posture of the case, it is necessary to summarize at least the history of the corporate litigation.

*The Treadway Litigation*

In September of 1979, Treadway Companies, Inc. ("Treadway") (which is in the

motel and bowling alley businesses) sued the Care Corporation ("Care") (which is in the nursing home and bowling alley businesses) and Daniel Cowin, a former director and financial adviser to Treadway. Treadway contended that Cowin had conspired with Care and two of its directors to seize control of Treadway by means that would violate the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a *et seq.*, and breach the fiduciary duty of the individual defendants. After a brief hearing on a preliminary injunction motion, this Court found that no irreparable injury had been shown, but ordered the parties to expedite discovery and to proceed to trial quickly.

In November, the Care defendants struck back, filing counterclaims against Treadway and certain of its officers and directors for claimed breaches of fiduciary duty. Treadway had found a "white knight," Fair Lanes, Inc. (which is also in the bowling alley business), and was seeking to effect a merger, with the initial step being the sale of a large block of voting preferred stock plus some treasury stock. The then contemplated transaction gave Fair Lanes an option to return the stock if the merger was not consummated. On November 27, 1979, this Court enjoined the issuance of any returnable preferred stock that could be voted at the next annual meeting. *Treadway Companies, Inc. v. Care Corp.*, 490 F.Supp. 653 (S.D.N.Y.1979). Thereafter, a new stock purchase agreement was entered into between Treadway and Fair Lanes to purchase authorized but unissued common stock, plus some treasury stock, at $6.50 a share. That agreement contained the terms of a possible merger between the two companies subject to the preparation of a definite agreement and approval by the boards and shareholders of both companies.

By this time Care owned about one-third of the Treadway stock, and the law of New Jersey, where Treadway is incorporated, required a two-thirds shareholder approval of such an agreement. On November 2, Care had publicly announced its intention to propose its own slate of nominees for election to Treadway's board and its intention to solicit proxies. A meeting of Treadway shareholders had initially been scheduled for December 20, 1979. However, in view of the imminent trial scheduled in this Court, the New Jersey Supreme Court deferred Treadway's meeting until March 20, 1980. The adversaries commenced soliciting proxies for their respective slates.

The trial of the action took place during the last two weeks of January and the first week of February of 1980. (Prior to trial, the Court dismissed Treadway's Exchange Act claims. *Treadway Companies, Inc. v. Care Corp.*, 490 F.Supp. 660 (S.D.N.Y.1980)). At the conclusion of the trial, the Court reserved decision on the plaintiff's common law claims and on certain of the defendants' counterclaims. Since the annual meeting was scheduled to take place the following month, and since Fair Lanes' purchase of 230,000 shares of Treadway stock was still at issue, this Court directed that, in the tabulation of the votes, the Fair Lanes shares be segregated.

The annual meeting, with its proxy contest, was held on March 20, 1980. Shortly before the vote, this Court had made certain factual findings, which were, in some respects, adverse to both Treadway and Care. However, since the matter was still *sub judice*, the Court directed that these preliminary findings not be disclosed to the shareholders as part of the proxy materials. On the votes cast, Treadway's nominees won by more than 100,000 votes if the Fair Lanes votes were counted, but lost by about the same amount if the Fair Lanes shares were not counted.

In April of 1980, after the annual meeting, this Court issued its opinion, *Treadway Companies, Inc. v. Care Corp.*, 490 F.Supp. 668 (S.D.N.Y.1980). Although the Court found that Care had attempted to conceal its intention to obtain control of Treadway for a period of time, and that Cowin had not behaved in a completely ethical manner, the Court nevertheless dismissed Treadway's claims for breach of fiduciary duty, holding, *inter alia*, that these actions were not material to the ultimate position of the

corporation. On Care's counterclaims, the Court found that there had been a breach of fiduciary duty in the sale of stock to Fair Lanes and permanently enjoined the voting of its 230,000 shares, which were found to be part of an attempt to perpetuate management's control, prevent a Care takeover bid, and dilute Care's statutory blocking position under New Jersey law. By judgment entered on April 21, 1980, the Court directed that the Care slate take control of Treadway as the prevailing party in the annual meeting after subtracting the 230,000 Fair Lanes votes.

On August 12, 1980, the Court of Appeals for the Second Circuit reversed this Court's judgment in *Treadway Companies, Inc. v. Care Corp.* to the extent that it enjoined the voting of the Fair Lanes shares, on the proposition that, since this Court had not found that Treadway's board (as distinguished from its chairman and president, Lieblich) had acted in bad faith or for improper purposes in authorizing the stock purchase agreement by Fair Lanes, the board's "business judgment" should not be disturbed. *Treadway Companies, Inc. v. Care Corp.*, 638 F.2d 357 (2d Cir. 1980). (Chief Judge Feinberg, dissenting, observed that the import of this Court's decision was quite clear that the board had been acting in bad faith in an attempt to retain incumbent management. *Id.* at 385.) While implicitly overruling this Court's factual findings, the majority opinion criticized the Court for withholding its factual findings from the stockholders and remanded for a new election so that the improper conduct of both sides could be made known to the

stockholders in voting on the merger with Fair Lanes.[1] *Id.* at 384–85.

Care petitioned for a rehearing and *en banc* consideration. These applications were denied on November 17, 1980. In its decision on the petition for rehearing, the majority made explicit the fact that it was overruling several of the factual findings of the district court.[2] *Id.* at 387 n.2.

*The Parness Litigation*

In December 1979, shortly after this Court issued its injunction with respect to the preferred stock in *Treadway Companies, Inc. v. Care Corp.*, Parness, the plaintiff in the instant action, had brought an earlier action ("*Parness I*") alleging claims of fraud under the federal securities laws and a pendent state law claim for breach of fiduciary duties. That complaint was then amended, attacking the further agreements with Fair Lanes, on the theory that these transactions were not being pursued for any corporate good; that the defendants did not disclose the true purposes of the transactions; that the market price of Treadway shares was artificially depressed; and that the individual defendants had violated their fiduciary duties. On May 12, 1980, this Court dismissed the amended complaint in *Parness I,* holding that the plaintiff was not a purchaser or seller of securities within the meaning of section 10(b) of the Exchange Act and that no section 17(a) claim under the Securities Act of 1933 existed. The pendent breach of fiduciary duty claim was also dismissed. *Parness v. Lieblich*, 489 F.Supp. 889 [1979–1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,392 (S.D.N.Y.1980).

---

1. The majority's reasoning is hard to fathom. The reason for withholding the lower court's findings from the stockholders was that the case was *sub judice*. Indeed, the appellate court reversed certain factual findings of the district court, so that if they had been revealed, a new vote would have been required for that reason.

2. The findings reversed are set forth in note 2 of the opinion on the petition for rehearing. It should be noted that an appellate court may not overrule factual findings of a lower court "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.

R.Civ.P. 52(a). This was a case in which the credibility of many witnesses was sharply contested. Decisions of the court of appeals for this circuit have repeatedly emphasized the importance of not deciding disputed factual issues upon documents, and the need for full evidentiary hearings. *See, e. g., Judge v. City of Buffalo*, 524 F.2d 1321, 1323 (2d Cir. 1975); *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). Apparently, these considerations do not apply on the appellate level, where, we must assume, the reversing judges have made an independent and careful review of the entire transcript.

Shortly after this Court's decision in the *Treadway* action, and before the dismissal of *Parness I*, the plaintiff brought the instant action. The plaintiff made many factual allegations similar to those in *Parness I*, but claimed also that the acts of the defendants constituted proxy violations under section 14(a) of the Exchange Act, as well as being breaches of fiduciary duty under state law. This second action drew heavily upon this Court's factual findings in the *Treadway* action, focusing on the December stock purchase agreement and the possible merger with Fair Lanes. Needless to say, the basis for the pleading diminished with the appellate court's reversal of certain of the factual findings. Even before the Second Circuit's *Treadway* decision was handed down, defendant Fair Lanes in the instant action had moved to dismiss the complaint on a variety of legal grounds. Those grounds were subsequently augmented by claims that the factual findings of the Second Circuit majority opinion created a collateral estoppel[3] against this plaintiff's factual claims, and that the direction by the appellate court for a new election mooted the claims of proxy violation.

Meanwhile, in the *Treadway* action, peace was apparently arrived at between Treadway and Care before the new elections could be held. Treadway agreed to pay nine dollars a share to purchase its stock held by Care (487,889 shares). This, of course, insured the re-election of the Treadway slate and the approval of the Fair Lanes merger.

Contending that this action, by which Treadway agreed to pay almost forty percent more to buy its own shares from Care than it had charged Fair Lanes to buy its treasury stock, clearly established the bad faith of Treadway's board, the plaintiff in the instant action now seeks leave to amend its complaint to include these subsequent developments. (The complaint in this action has already been amended once. Consequently, this would be a second amended complaint in the second action.) The plaintiff also seeks to drop all of the individual outside director defendants[4] except Gluckman (who has never been served) and Cole and seeks to predicate jurisdiction upon diversity of citizenship.[5]

The positions of the various defendants on the outstanding motions are not uniform. Those who would be dropped in the amended complaint obviously do not oppose the granting of leave to amend. Some of the defendants (particularly Fair Lanes) want the outstanding motions to dismiss decided with respect to the previous amended complaint and oppose granting leave to amend.[6]

The plaintiff, on the other hand, requests that amendment be allowed and that the outstanding motions to dismiss be considered as if addressed to the second amended complaint. The latter suggestion is not feasible since the facts, as well as certain of the legal claims, have been changed. To the extent that the plaintiff can avoid being collaterally estopped by the Second Circuit's decision, it will have to rest in great part upon the recent actions of Treadway in purchasing Care's Treadway stock for nine dollars a share, along with (possibly) additional developments in the Fair Lanes merger, which, we are told, are imminent. Thus, the Court is inclined to agree with

---

3. The defendants also contend that this action is barred by *res judicata*. They reason that this action, although brought as a class action, states only derivative claims, and thus, since Care was a substantial stockholder, which had already litigated these claims, the other stockholders are bound by the judgment.

4. All of the individual defendants are outside directors with the exception of Daniel Parke Lieblich, who is president and chairman of the board of Treadway.

5. If diversity jurisdiction exists, the fine questions as to whether the plaintiff's complaint states a cause of action under the federal securities laws would not be critical to the continuation of the action.

6. Besides attacking the sufficiency of the complaint, Fair Lanes has raised an issue concerning personal jurisdiction. The plaintiff, in turn, seeks to compel answers to interrogatories before confronting that issue. In light of this Court's decision, neither of these issues need be resolved.

defendant Fair Lanes that the first amended complaint is now deficient and should be dismissed.

With respect to the proposed amended complaint, we note that it is the plaintiff's fifth or sixth endeavor in that regard. (It is not truly an amended complaint, since it rests heavily upon events that occurred since the commencement of this action. Indeed, it is quite likely that if this amendment were allowed, subsequent developments would necessitate further amendments. Of course, all of this could have been avoided had the plaintiff and his counsel awaited the ultimate resolution of the Treadway merger/takeover contest.) Moreover, there are extremely difficult questions concerning the legal effect of the Second Circuit's decision in light of subsequent developments.

While leave to amend should be freely granted, Fed.R.Civ.P. 15(a), it is a matter within the discretion of the trial court, e. g., *Izaak Walton League of America v. St. Clair*, 497 F.2d 849 (8th Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974), and each case must be decided upon its particular facts and circumstances. *E. g., Sackett v. Beaman*, 399 F.2d 884 (9th Cir. 1968); *Caddy-Imler Creations, Inc. v. Caddy*, 299 F.2d 79 (9th Cir. 1962). Not all amendments are granted under all circumstances. *Sobel v. Yeshiva University*, 477 F.Supp. 1161, 1168–69 (S.D. N.Y.1979). For example, leave to amend may be denied where, as here, a plaintiff has already been given several opportunities to replead. *See, e. g., Mooney v. Vitolo*, 435 F.2d 838 (2d Cir. 1970) (per curiam); *Sackett v. Beaman, supra; Thomas v. Amerada Hess Corp.*, 393 F.Supp. 58, 78 (M.D. Pa.1975).

We have an extremely complicated situation here. It can be clarified and simplified by the dismissal of the present action without prejudice to the institution of a new action. Indeed, Fair Lanes urges the Court to accept the "unique opportunity to wipe the slate clean on the litigation mess created by plaintiff," noting that the plaintiff can always file another action. (Defendant Fair Lanes' Memorandum of Law at 20.) This seems the wisest course.

There is another benefit to be served by the dismissal of this action in favor of a new action. If the complaint is amended, the case will continue before this Court, whereas if a new action is commenced, it will almost certainly be assigned randomly to a different judge. Rather than running the risk of having this Court act like Galileo after the Inquisition (muttering that no matter what the court of appeals may have said, the board of directors of Treadway has not been acting in the best interest of the shareholders), it is desirable to have the matter before a new judge, whose assessment of the Second Circuit's factual findings will not be obscured by his own personal knowledge of the facts. Consequently, the motions to dismiss are granted without prejudice to the institution of a new action.

So ordered.