Francisco SOLER, et al., Plaintiffs,

v.

G & U, INC., Charles Gratz, d/b/a Charles Gratz Farm, Defendants.

Jann S. FLING, et al., Plaintiffs,

v.

PEAT–GRO FARMS, INC., Defendant.

Pablo LIVAS, et al., Plaintiffs,

v.

BIERSTINE FARMS, INC., Defendant.

Gilberto GONZALEZ, et al., Plaintiffs,

v.

CEDAR VALLEY GROWERS, INC., Defendant.

Freddy VALENTIN, et al., Plaintiffs,

v.

Raymund MYRUSKI, Defendant.

Cecelio ENCARNACION, et al., Plaintiffs,

v.

W.K.W. FARMS, INC., Defendant.

Nos. 78 Civ. 6252 (CHT), 78 Civ. 5257 (CHT), 78 Civ. 6258 (CHT), 78 Civ. 6259 (CHT), 78 Civ. 6260 (CHT) and 78 Civ. 6261 (CHT).

United States District Court,
S.D. New York.

Feb. 13, 1986.

Farmworker Legal Services of New York, Inc., Newburgh, N.Y., for plaintiffs; Howard Schell Reilly, Thomas A. Harnett, of counsel.

Keane & Beane, P.C., White Plains, N.Y., for defendants; Edward F. Beane, of counsel.

TENNEY, District Judge.

The plaintiffs, approximately 100 migrant farmworkers, brought this action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (1982) ("FLSA" or "Act"), seeking to recover certain wage deductions made by the defendants, six farm owners. The plaintiffs alleged that the defendants had violated the FLSA by deducting rent from the plaintiffs' wages for housing provided in the defendants' labor camps during the 1978–1983 growing seasons.

In a recent opinion, the Court granted the plaintiffs' motion for summary judgment against the defendants. *See* 615 F.Supp. 736 (S.D.N.Y.1985). The Court held that housing costs could not be computed as part of the plaintiffs' minimum wage under the FLSA because the housing was provided for the employers' benefit, rather than for the benefit of the workers.

The plaintiffs now argue that (1) the defendants' violations of the FLSA were

"willful" so that the three year limitations period provided in 29 U.S.C. § 255(a) ("§ 255(a)") should be applied, and (2) liquidated damages should be awarded under 29 U.S.C. § 216(b) ("§ 216(b)"). The Court agrees for the reasons set forth below.

The plaintiffs also move pursuant to Fed. R.Civ.P. ("Rule") 15(a) and (d) for permission to amend their complaint for the fifth time, in order to correct certain errors contained in the Fourth Amended Complaint, and to add new plaintiffs in accordance with Rule 21. The plaintiffs further seek to amend their complaint in order to add supplemental claims for 1983-1984. The plaintiffs' request for permission to amend the complaint is denied in terms of adding new parties, but the plaintiffs may correct the pertinent errors, and they may add the supplemental claims.

## DISCUSSION

### I. *Limitations Period*

Section 255(a) of the FLSA provides that an action brought under the Act must be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]" For the reasons set forth below, the Court concludes that the violation in this case was "willful", and, therefore, the three year limitations period is applicable.

■ The Second Circuit has made it clear that, for the purposes of § 255, a violation is willful if the employer (1) knows or has reason to know that his business is subject to the provisions of the FLSA, and (2) his practice does not conform to FLSA requirements. *See Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 652 (2d Cir.1983). *See also Marshall v. Erin Food Services, Inc.*, 672 F.2d 229, 231 (1st Cir.1982); *Donovan*

*v. Kaszycki & Sons Contractors, Inc.*, 599 F.Supp. 860, 870 (S.D.N.Y.1984). Thus, a violation is willful if the employer knew that the FLSA was "in the picture," and would govern his conduct. *See Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.1971), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972).

■ In this case, it is undisputed that the defendants knew that their conduct was subject to the FLSA. The FLSA did not apply to the farming industry before 1978, and it was specifically amended in order to extend protection to farmworkers. The growers readily admit to knowing that the FLSA became effective in the farming industry in 1978, and that they were bound by its provisions. The Court has already concluded that the growers' conduct did not conform to the FLSA requirements. Thus, both prongs of the willfulness standard are satisfied.[1]

The defendants argue, however, that the willfulness standard set forth by the Second Circuit is not applicable in this case because the defendants consulted with their attorneys and with officials of the Department of Labor, and affirmatively attempted to comply with FLSA regulations. Essentially, the defendants are trying to assert a "good faith" defense. This argument, however, cannot succeed since § 255 does not provide a good faith defense. Even if the growers acted in good faith and believed that the wage deductions they made were lawful, such conduct does not shield them from the additional year of liability.[2] *See Donovan v. Carls Drug Co.*, 703 F.2d at 652; *Donovan v. Kaszycki*, 599 F.Supp. at 870. *See also Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113 (4th Cir. 1985) (rejecting a more stringent definition of willfulness).[3] Thus, the defendants are subject to the three year limitation period.

---

**1.** The defendants' violation of the FLSA was discussed at length in the opinion granting summary judgment, 615 F.Supp. 736 (S.D.N.Y.1985), and that discussion will not be repeated here. The current opinion should be read in conjunction with the prior one.

**2.** The question of whether the defendants did, in fact, act in good faith is addressed in the section concerning liquidated damages.

**3.** The defendants argue that the Court should apply the definition of willfulness that was recently adopted by the Supreme Court in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111,

## 724

### II. *Liquidated Damages*

■ Section 216(b) of the FLSA directs that an employer who violates the minimum wage provisions of the Act "shall be liable to the . . . employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). It is well established that, under this provision, liquidated damages are compensatory rather than punitive. *See Heiar v. Crawford County, Wis.,* 746 F.2d 1190, 1202 (7th Cir.1984); *cert. denied,* —— U.S. ——, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *Thompson v. Sawyer,* 678 F.2d 257, 281 (D.C.Cir. 1982); *Marshall v. Brunner,* 668 F.2d 748, 753 (3rd Cir.1982). Such damages are intended to compensate for any losses which a worker might suffer because of the wrongful retention of his pay. *See Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). Liquidated damages are not intended to be a penalty or punishment. *See Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222–23, 86 L.Ed. 1682 (1942).

■ Section 11 of the Portal-to-Portal Act ("Portal Act"), 29 U.S.C. § 260 ("§ 260"), permits employers to assert a good faith defense to the FLSA's liquidated damages provision. Section 11 provides in relevant part:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount

thereof not to exceed the amount specified in section 216 of this title.

In order to prevail on this defense, the employer must show (1) subjective good faith and (2) objectively reasonable grounds for believing that he was acting in compliance with the provisions of the FLSA. *See Thompson v. Sawyer,* 678 F.2d at 282. The employer bears the burden of proving good faith and reasonableness. If the employer fails to satisfy those requirements, the district court is without discretion to deny liquidated damages. *See Williams v. Tri-County Growers, Inc.,* 747 F.2d 121, 129 (3rd Cir.1984); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 465 (D.C.Cir. 1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

In the case at bar, the Court concludes that the farmworkers are entitled to liquidated damages for wages deducted from 1978 to 1983, when the Administrator of the Department of Labor ("Administrator") issued his decision in the case. The growers have failed to discharge their burden of proving good faith. It appears that the growers deducted housing costs from the farmworkers' wages in a deliberate attempt to circumvent the minimum wage requirements of the FLSA.

■ The good faith defense provided by the Portal Act was intended to protect an employer who innocently and to his detriment followed the law as it was laid down to him by a government agency, where the agency's interpretation of the law subsequently turned out to be erroneous or invalid. *See Equal Employment Opportunity Comm'n v. Home Ins. Co.,* 672 F.2d 252, 263 (2d Cir.1982). The defendants argue that they followed the advice of the Bronx office of the Wage and Hour Divi-

---

105 S.Ct. 613, 625 n. 21, 83 L.Ed.2d 523 (1985). That case involved the interpretation of § 7(b) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 626(b), which permits the award of liquidated damages for willful violations of the ADEA. The Supreme Court held that an employer's conduct is not willful unless he actually knew he was violating the ADEA or he acted in reckless disregard of the ADEA's requirements.

Section 7(b) of the ADEA, however, was intended to be punitive in nature. *See* 105 S.Ct. at 624. Section 255(a) of the FLSA, which establishes the limitations period at issue here, was not intended to be punitive. Rather it was intended as a restitutionary measure to permit workers to recover back wages that were wrongfully withheld. Thus, the willfulness standard under § 255(a) should be less stringent than that applied under the quasi-criminal liquidated damages provision of the ADEA.

sion of the Labor Department, and they had the approval of the Employment and Training Division of the Labor Department. The defendants knew, however, that neither agency had the authority to determine whether the defendants' conduct complied with the FLSA.[4]

In the prior opinion granting summary judgment, the Court rejected the growers' contention—which is reasserted here—that they properly relied on the advice of appropriate government agencies. *See* 736 F.Supp. at 746–49. Only the Administrator of the Labor Department could make that determination, and the defendants knew that a hearing before the Administrator was pending. Thus, although the defendants argue that they believed they were entitled to make the pertinent deductions under the provisions of the FLSA, they cannot show they had reasonable grounds for that belief.[5] In effect, the growers were applying their own interpretation of the Act. That interpretation cannot insulate the growers from liability.

■ Even if the growers did act in good faith, however, the Court is convinced that liquidated damages are appropriate in the instant case.[6] The Act's liquidated damages provision was intended to be compen-satory and should be construed in light of the humanitarian purpose of this legislation. *See Donovan v. I and J, Inc.*, 567 F.Supp. 93, 98 (D.N.M.1983); 20 C.F.R. § 790.2 (1985).[7]

■ In this case, liquidated damages will provide compensation for the delayed receipt of wages. The growers made the housing deductions at issue here from 1978 to 1983, and the plaintiffs will not receive payment before 1986. Thus, the plaintiffs have been deprived of the use of that money for a significant period of time.

Liquidated damages will also compensate for certain intangible losses suffered by the plaintiffs. *See Overnight Motor Co. v. Missel*, 316 U.S. at 583–84, 62 S.Ct. at 1222–23. Such compensation comports with the FLSA's underlying purpose of improving workers' standard of living, and promoting workers' health and well-being. *See Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981).

The record shows that because of the low wages and seasonal nature of the work, the plaintiffs generally live on the edge of poverty. Thus, any deduction from the plaintiffs' wages directly affects their standard of living.[8] Awarding liquidated damages

---

**4.** The Bronx Office established a policy whereby it would charge the growers with a violation of the FLSA if the growers deducted more than $12.50 per week from an individual's wages for housing costs. It appears, however, that this policy was intended to protect the workers from overwhelming wage deductions rather than to insulate the growers from liability.

**5.** In considering whether the defendants were acting in good faith, it is interesting to note that the growers did not charge any rent for the housing in the labor camps until they had to pay higher wages under the FLSA. It appears that the defendants were looking for a way to limit the amount of wages they would be obligated to pay.

**6.** If the employer satisfies the burden of proving good faith, then it is within the sound discretion of the court to decide whether or not liquidated damages should be awarded. *See Thompson v. Sawyer*, 678 F.2d at 282; *Donovan v. Kaszycki*, 599 F.Supp. at 871; 29 C.F.R. § 790.22 (1985).

**7.** The defendants argue that after February 1982, they adjusted their housing deductions in order to act in accordance with a decision issued by the Administrative Law Judge ("ALJ") who had heard the case, and therefore no liquidated damages should be awarded for the period between February 1982, when the ALJ ruled, and 1983, when the Administrator ruled. Although there is some merit to this argument, the Court is not convinced that the defendants have met their burden of proof under Section 11 of the Portal Act. Furthermore, for the reasons set forth in the discussion, the Court concludes that even if the defendants did act in good faith, liquidated damages are appropriate.

**8.** Liquidated damages are particularly appropriate in light of the condition of the housing for which the defendants were charging rent. The record shows that the housing was generally of substandard quality. Lighting, plumbing, and ventilation tended to be poor or non-existent. The accommodations were often over-crowded and lacked the conveniences of modern day living that most people take for granted such as access to a telephone, washing machine or public transportation.

in this case will compensate the plaintiffs for any decrease in their standard of living or any ill effects that they suffered as a result of their reduced wages.

### III. *Amending the Complaint*

A motion for leave to amend is committed to the sound discretion of the trial court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1087 (2d Cir.1977). While leave to amend should be freely given under Rule 15, each case must be decided on its particular facts, and in light of the specific circumstances. Factors to be considered include untimeliness, undue delay, bad faith, and prejudice to adverse parties. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Marine Midland Bank v. Keplinger & Assoc., Inc.*, 94 F.R.D. 101, 103 (S.D.N.Y.1982); *Parness v. Lieblich*, 90 F.R.D. 178, 182 (S.D.N.Y.1981); 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d ed. 1980).

In the case at bar, the plaintiffs have requested permission to amend the complaint for the fifth time. Plaintiffs seek to (1) correct certain errors; (2) supplement their claims to include alleged violations that occurred after the Administrator issued his opinion in 1983; and (3) add a number of new plaintiffs. The request is granted in part and denied in part.

### A. *Correction of Errors*

The defendants do not object to the complaint being amended insofar as it corrects errors contained in the Fourth Amended Complaint. *See* Defendants' Brief at 33. Accordingly, the plaintiffs may amend the complaint to that extent.

### B. *Supplemental Claims*

■ The Administrator issued a decision in this action on February 15, 1983, and the plaintiffs now seek to add claims concerning wage deductions that were made after the Administrator issued his decision. The Court has permitted the plaintiffs to add similar claims in the past. *See* 103 F.R.D. 69, 73–74; 86 F.R.D. 524, 526–27. In this instance, the plaintiffs' additional claims stem from the same practices originally challenged in this action, and the interests of justice would best be served by resolving all the rights and liabilities existing between the parties in one lawsuit. *See* 103 F.R.D. at 73; 86 F.R.D. at 527. Therefore, the plaintiffs may amend the complaint to add claims for violations that allegedly took place after the Administrator issued his decision.

Those claims, however, raise questions of fact that have not been adjudicated. It is undisputed that after the Administrator rendered his opinion the defendants were justified in deducting housing costs from the plaintiffs' wages, as long as the deductions conformed with the Administrator's decision. *See* 29 U.S.C. § 259. The plaintiffs contend that the deductions did not conform with the Administrator's decision, and the growers contend that the deductions did conform. Thus, there is a question of fact that must be resolved. Accordingly, judgment will be entered with regard to only those claims that existed prior to the date of the Administrator's decision.

### C. *Additional Parties*

The plaintiffs also seek to add 21 people as plaintiffs. The Court feels constrained to deny the plaintiffs' request. This case was commenced seven years ago, and the plaintiffs have already been given the opportunity to amend their complaint four times. Indeed, the new parties did not attempt to join this action until after the Court had already decided the case and had directed that judgment be submitted. There comes a point at which the time to add new parties is exhausted. *See Evans v. Syracuse City School District*, 704 F.2d 44, 46 (2d Cir.1983); *Robinson v. Cuyler*, 511 F.Supp. 161, 165 (E.D.Pa.1981); *Burke*

 

*v. Green,* 422 F.Supp. 350, 359 n. 17 (E.D. Pa.1976); *see also Armstrong v. McAlpin,* 699 F.2d 79, 93 (2d Cir.1983) ("[T]he district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead.").

■ The motion to add new parties is untimely, and permitting such an amendment would result in undue delay of the resolution of this litigation. Moreover, allowing the plaintiffs to add new parties at this late date could very well result in prejudice to the defendants. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1488 at 440 (1971) (Delay may have "resulted in the loss of valuable evidence ... [and] may put the opposing party to the added burden of further discovery, preparation, and expense".). Therefore, the request for permission to amend the complaint to add new parties is denied.

### CONCLUSION

For the reasons set forth above the Court concludes that the three year limitations period applies to the plaintiffs' claims rather than the two year period. The Court also concludes that the plaintiffs are entitled to full liquidated damages under § 216(b).

The plaintiffs may amend the complaint in order to correct the specified errors contained in the Fourth Amended Complaint, and to add claims arising after the Administrator's decision was issued. The request to add additional parties is denied. Plaintiffs are directed to submit their Fifth Amended Complaint within 30 days. Counsel for the parties are directed to submit judgment within 30 days.

So ordered.