Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

KASZYCKI & SONS CONTRACTORS, INC., A Corporation and William Kaszycki Individually and as President, Defendants.

No. 82 Civ. 3287 (JES).

United States District Court, S.D. New York.

Dec. 21, 1984.

Jay S. Berke, Regional Sol., Philadelphia, Pa., for plaintiff, U.S. Dept. of Labor; Francis X. Lilly, Sol. of Labor, U.S. Department of Labor, Washington, D.C., William M. Gonzalez, New York City, of counsel.

James W. Dougherty, Jersey City, N.J., for defendants Kaszycki & Sons Contractors, Inc.

George Farber Aney, Herkimer, N.Y., for defendant William Kaszycki.

## OPINION & ORDER

SPRIZZO, District Judge:

Plaintiff Donovan, United States Secretary of Labor, brings this action pursuant to section 17 of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 217, to enjoin defendants Kaszycki & Sons Contractors, Inc. ("Kaszycki & Sons") and William Kaszycki ("Kaszycki") from (1) violating sections 6(a), 7(a), 11(c) and 15(a) of the FLSA, 29 U.S.C. §§ 206(a), 207(a), 211(c) & 215(a), and (2) from withholding wages due defendants' employees pursuant to sections 6(a) and 7(a), *and* for liquidated damages pursuant to section 16(c) of the FLSA, 29 U.S.C. § 216(c). The action was tried to the Court without a jury. This Opinion and Order constitutes the Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).

## I

### FINDINGS OF FACT

Defendant Kaszycki & Sons was at all relevant times a New York corporation engaged in the business of demolition. Plaintiff's Pre-Trial Order ("PTO") ¶ V [1]; Plaintiff's Exhibit 31 ("P.Ex. 31") at 10–12. Kaszycki & Sons is an enterprise

> engaged in commerce or the production of goods for commerce ... in that its employees were engaged in commerce or the production of goods for commerce, or handled or otherwise worked on goods or materials that have been moved in or produced for commerce, and it has an annual gross volume of sales made or business done of not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated) ....
> [and] in that its employees were engaged

in the business of construction or reconstruction or both.

PTO at V. At all relevant times defendant Kaszycki was president of Kaszycki & Sons, P.Ex. 31 at 11, and ran the corporation, *id.* at 12. Kaszycki formed Kaszycki & Sons for the purpose of contracting with Trump Equitable Fifth Avenue Company ("Trump") to demolish the Bonwit Teller building located at Fifth Avenue and 56th Street in Manhattan. *Id.* at 10–11, 16–17.[2]

Prior to forming Kaszycki & Sons, Kaszycki owned and ran at least two other companies, hired employees for those companies, and paid his employees minimum wage and overtime compensation. *Id.* at 6–10. With respect to another demolition job performed just before the Trump job, however, defendant testified he was not aware of how many hours his employees worked, how they were paid, or whether they received compensation for overtime. *See id.* at 28–33.

The demolition work on the Bonwit Teller building commenced on or about January 29, 1980, *see* P.Ex. 31 at 16, and was completed on or about June 21, 1980, *see* Trial Transcript ("Tr.") at 96. Kaszycki hired Zbigniew Goryn ("Goryn") as supervisor of the job, *see* Tr. at 5–6; P.Ex. 31 at 22, 33, and Bodgan Krawczynski ("Krawczynski") as timekeeper, *see* Tr. at 55–56; P.Ex. 31 at 43–44, 90. Kaszycki was generally on the job site daily, and at least once a week, unless he was out-of-town. *See* P.Ex. 31 at 39, 48; Tr. at 71.

■ Kaszycki, and on his authority Goryn and Krawczynski, hired employees to do the work under the Trump contract. *See, e.g.,* Tr. at 72–73, 175; P.Ex. 31 at 33–35, 39, 46.[3] Among those employees were all

---

**1.** While plaintiff submitted the Pre-Trial Order, rather than submitting a Joint Pre-Trial Order, counsel for each defendant signed the Pre-Trial Order at the end thereof as "APPROVED AS TO FORM AND SUBSTANCE." *See* Plaintiff's Pre-Trial Order. Therefore, those facts listed in paragraph V as "Undisputed Facts" are treated as such by the Court.

**2.** According to the Pre-Trial Order ¶ V, Kaszycki & Sons was organized pursuant to the laws of

New York in May, 1975 under the name W–K Maintenance Corporation. On or about February 13, 1980, the name of the corporation was duly changed to Kaszycki & Sons Contractors, Inc.

**3.** Virtually every employee interviewed testified that he was hired by one of these men. *See,* P.Exs. 1–6, 8–14, 16–24, 26, 28–29, 40. Some of these employees were originally hired to do work for Kaszycki on other jobs.

of the persons listed in Appendix A to this Opinion and Order ("the employees"), *see* Tr. at 115–16. Defendants also employed members of Local 95 of the Housewreckers Union ("the union employees"). P.Ex. 31 at 35, 37, 61, Exhibit 2.[4] Defendants' recordkeeping and payment of wages with respect to the union employees is not at issue in the instant action. In fact, the evidence demonstrates that defendants kept complete records for the union employees and timely paid them full regular and overtime compensation, *see* Tr. at 104–05; P.Ex. 31 at 66–73, 97, Exhibit 3, in compliance with the same provisions of the FLSA that defendants are alleged to have violated with respect to the non-union employees. Based on the foregoing, the Court finds that defendants were or reasonably should have been aware of the FLSA requirements at issue herein with respect to minimum wage, overtime compensation, and recordkeeping.

The non-union employees worked on two twelve-hour shifts. The first shift, or day shift, generally ran from 6:00 a.m. to 6:00 p.m., and the second shift, or night shift, ran from 6:00 p.m. to 6:00 a.m., seven days a week. *E.g.,* Tr. at 7–9, 72; P.Ex. 31 at 42–43.[5] Kaszycki was aware that the employees worked these hours, *see* P.Ex. 31 at 42–43, and that they were therefore entitled to be paid for overtime, *id.* at 58. Goryn supervised the day shift, *e.g.,* Tr. at 16, 48; P.Ex. 31 at 35, 41, and Krawczynski supervised the night shift, *e.g.,* Tr. at 9, 48, 60; P.Ex. 31 at 43–44. Each kept records

of the hours worked by the men on their respective shifts. *E.g.,* Tr. at 9, 56; P.Ex. 31 at 41.

Goryn's time record for first shift employees, which was lost, was reconstructed for purposes of this litigation in P.Ex. 33. *See* Tr. at 24–27. Krawczynski's record of hours worked by second shift employees is reconstructed in P.Ex. 35. *See* Tr. at 57–62. Kaszycki testified that he had seen at least Krawczynski's time records. P.Ex. 31 at 46. Some of the employees kept records of their own hours worked and wages received or owed.[6] Kaszycki, Goryn and Krawczynski all testified that Goryn and Krawczynski were responsible for keeping the time records. *See* Tr. at 9–10, 56; P.Ex. 31 at 41.

It appears, however, that defendants, the *employers,* neither received nor kept these records, and that *no* formal company records were kept by defendants in the company offices or in any central recordkeeping office, with respect to these employees, *see* P.Ex. 31 at 58–59, 73–74, although, as Kaszycki knew, the company bookkeeper did keep records with respect to the union employees. *See* Tr. at 101, 170; P.Ex. 31 at 35–36, 67–68.

The records kept by Goryn and Krawczynski did not contain information with respect to Social Security numbers, *see* Tr. at 74, 77–78, 99; P.Ex. 31 at 74, although some employees had Social Security numbers.[7] There was also no record of employees' addresses. *See* Tr. at 99.

---

4. While defendant Kaszycki testified that only the union employees did the demolition work, and that the non-union employees were not involved in this, *see* P.Ex. 31 at 37–38, 44, the Court finds as a matter of fact that the non-union employees were engaged in demolition work. Kaszycki's testimony is inconsistent on this point. He later testified that the union workers started on the job "[a]fter the demolition work," *see id.* at 38. The non-union employees also testified that they were involved in demolition work. *See* P.Exs. 1–3, 5–7, 9–18, 21, 22, 25, 27, 28, 40. One employee testified that the union workers did the final demolition of the outside walls of the building. *See* P.Ex. 21 at 34. Kaszycki himself stated that the union employees were hired to take the building

down, *see* P.Ex. 31 at 35, 37, and the non-union employees were working inside the building, *see id.* at 45.

5. The employees also testified to working these or similar hours. *See* P.Exs. 1–5, 7–13, 15–25, 28, 40.

6. The employees described the records they kept, and some produced those records at their interview or deposition. *See* P.Exs. 1–3, 6, 8–9, 11, 13–14, 17–18, 20, 23, 26, 28–29, 40.

7. *See, e.g.,* P.Ex. 1 at 26; P.Ex. 8 at 43; P.Ex. 9 at 34; P.Ex. 11 at 32, 41; P.Ex. 12 at 12; P.Ex. 13 at 51; P.Ex. 17 at 25; P.Ex. 19 at 20; P.Ex. 21 at 42; P.Ex. 28 at 47, 50.

Defendants agreed to pay these employees $4 to $6 an hour, depending on their skills and the work they performed. *See, e.g.,* Tr. at 10, 39–40; P.Ex. 31 at 35; *see also* P.Ex. 13 at 13. All these agreements appear to have been oral, and there were no written contracts with respect to employment or rate of pay. *See, e.g.,* P.Ex. 31 at 84; P.Exs. 1–14, 16, 18, 20, 22–23, 25–27, 29, 40. No provision was made for overtime compensation with respect to hours worked in excess of forty hours in any workweek. Tr. at 89.[8]

Defendants did not pay the employees on a weekly or regular basis, but paid them sporadically, if at all, and in amounts less than was due,[9] a fact which Kaszycki admitted. P.Ex. 31 at 51. Kaszycki would give money to Goryn and Krawczynski to pay the employees on their respective shifts. *See, e.g.,* Tr. at 34–35; P.Ex. 31 at 32, 48, 95–96. On occasion, Kaszycki paid some employees directly, sometimes by personal check, but in most instances, he gave money to Goryn and Krawczynski for that purpose. *See, e.g.,* Tr. at 43; P.Ex. 31 at 48.[10]

Kaszycki kept no records of the amount of money given to Goryn or Krawczynski to pay the employees. *See* P.Ex. 31 at 49. While he testified that his secretary was aware of the amounts he took for this purpose, there is no record reflecting this. *See id.* at 50. However, Goryn kept a book, placed in evidence as P.Ex. 32, in which he recorded the wages due and monies paid to the day shift employees, *see* Tr. at 13, and Krawczynski kept a record, P.Ex. 37, of the wages owed the night shift employees, *see* Tr. at 67–68; P.Ex. 22 at 14; P.Ex. 40 at B–25, B–46. Krawczynski also prepared a record of money owed to first shift employees, P.Exs. 34 and 37A, apparently prepared at Kaszycki's request. *See* Tr. at 63–65, 68. Kaszycki knew of the arrearage in wages due to employees, and discussed the problem with both Goryn and Krawczynski, *see* Tr. at 32–33, 71, and with the employees themselves. *See, e.g.,* P.Ex. 31 at 51–52, 101.[11]

James Dondzil ("Dondzil"), a compliance officer for the Wage and Hour Division of the Department of Labor, conducted an official investigation of Kaszycki & Sons and William Kaszycki with respect to the demolition job, for the period of January to June, 1980. Tr. at 96–97. In the course of this investigation, Dondzil requested from defendants *all* employee payroll records. Defendants gave Dondzil records regarding the union employees, but no records were produced with respect to the non-union employees, including those listed in Appendix A. *See* Tr. at 100; P.Ex. 31 at 73. The records kept by Goryn and Krawczynski were not produced by the defendants, Tr. at 99–100, but were obtained directly from Goryn and Krawczynski, *id.* at 142–43.

Dondzil and two assistants interviewed approximately twenty-six employees with respect to, *inter alia*, their place and peri-

---

**8.** For the employees' testimony on this point, *see, e.g.,* P.Ex. 3 at 10; P.Ex. 6 at 14, 16; P.Ex. 7 at 44–45, 55–56; P.Ex. 8 at 22; P.Ex. 13 at 30, 37; P.Ex. 17 at 20; P.Ex. 19 at 12, 26; P.Ex. 20 at 15, 24; P.Ex. 21 at 11; P.Ex. 25 at 14; P.Ex. 28 at 13; P.Ex. 40 at B–5, B–11, B–18, B–25, B–40, B–41, B–43.

**9.** *See, e.g.,* Tr. at 11–12, 33–35, 63, 71–72. Almost all the employees who testified discussed whether and how they were paid. *See* P.Ex. 1 at 10–12; P.Ex. 2 at 27–28; P.Ex. 3 at 35–36, 48, 55; P.Ex. 4 at 12–13; P.Ex. 5 at 12, 13; P.Ex. 6 at 14–15, 20–21; P.Ex. 7 at 29–30; P.Ex. 8 at 15, 41; P.Ex. 9 at 11–14; P.Ex. 10 at 19; P.Ex. 11 at 18–22; P.Ex. 12 at 15–17, 27–28; P.Ex. 14 at 15, 16; P.Ex. 15 at 20; P.Ex. 16 at 14; P.Ex. 18 at 13–15; P.Ex. 19 at 16–19; P.Ex. 20 at 20, 26–28;

P.Ex. 21 at 18–21; P.Ex. 22 at 12; P.Ex. 23 at 26–28; P.Ex. 24 at 22–23; P.Ex. 25 at 14–15; P.Ex. 26 at 24; P.Ex. 27 at 14–19; P.Ex. 28 at 20–22; P.Ex. 40 at B–5, B–9, B–16, B–18, B–20, B–22, B–25, B–26, B–27, B–33, B–38, B–46, B–47, B–48.

**10.** Most employees testified that Goryn and Krawczynski paid them, while a few stated that they received money directly from Kaszycki. Many employees were paid with checks for which there were no funds. *See, e.g.,* Tr. at 45; P.Exs. 1–6, 8–12, 14–16, 18–25, 27–29, 40.

**11.** Many employees testified specifically about conversations with Kaszycki about the wages they were owed. *See, e.g.,* P.Exs. 1, 3, 4, 6, 8, 10–14, 17–19, 21, 22, 24–29, 40.

od of employment, the amount they were supposed to be paid, the amount they actually were paid, and whether or not they received overtime compensation. In the course of this litigation, twenty-nine employees were deposed with respect to the same topics. *See* Tr. at 97–98.

The employee interview statements, compiled in P.Ex. 40, and the depositions, P.Exs. 1–29, along with the deposition testimony of defendant Kaszycki, the trial testimony, and records kept by Goryn and Krawczynski, all demonstrate that defendants failed to pay the employees the required wages and overtime compensation. These amounts which remain due and owing to the employees were calculated by Dondzil from all the evidence, and are set forth in P.Ex. 38 and summarized in P.Ex. 39 and Appendix A to this Opinion. Defendants do not appear to dispute in their post-trial papers that these amounts are due and owing to each employee. *Cf.* Tr. at 145. The figures in P.Ex. 38 reflect the most conservative estimates of damages given all the information considered. *See* Tr. at 167.

The only explanation offered for what was a clear violation of the FLSA was Kaszycki's claim that at some point around the middle of the job, he "lost the control of paying" his employees, because Trump took over all payroll responsibilities, *see* P.Ex. 31 at 52, 64–65, through a special checking account at Chase Manhattan Bank, which required the signature of a Trump representative, Tom Macari, on any check drawn on that account. *See id.* at 53–54. Kaszycki also claimed that he told the non-union employees, when they asked about their wages, that they would have to get their money from Trump. *Id.* at 101. At another point, however, Kaszycki said that Macari was directly paying the *union* employees, *id.* at 96–97, but that he, Kaszycki, was giving money to Goryn and Krawczynski to pay the *non-union* employees. *Id.* at 95–96. He also stated that Trump was giving him a check each week to meet the payroll. *Id.* at 98.

One employee testified that he was not paid by Macari, *see* P.Ex. 13 at 48–49, and another testified that Macari did not pay non-union employees, *see* P.Ex. 3 at 40. Most testified that they did not even know who Macari was. Two employees stated that they did receive money from Macari once, *see* P.Ex. 18 at 26; P.Ex. 19 at 33, and one testified that Macari paid other non-union workers twice, *see* P.Ex. 20 at 44. However none testified that Macari was responsible for their pay, or that they received money from him more than once or twice. None of the employees testified to being told by Kaszycki that they would be paid by Trump, and Goryn testified that Trump was involved only in the payment of the union employees. *See* Tr. at 42.

The employees, including Goryn and Krawczynski, obviously believed Kaszycki, as their employer, was responsible for paying their wages, and the evidence demonstrates that he consistently failed to do so. Therefore, the Court finds that Trump did not take over the responsibility for paying the non-union employees, nor were defendants relieved of their responsibility to pay these employees. As defendants themselves have stated, "[t]he fact of the matter is that the defendants had improvidently entered into agreements that were obviously underbid for the amount of work, time, hours and effort that was required...." *See* Letter Memorandum of George F. Aney at 2 (March 13, 1984); *see also* Letter Memorandum of James W. Dougherty at 1 (Feb. 29, 1984). Whether or not defendants were receiving sufficient funds from Trump to cover the wages due these employees, however, has no bearing on defendants' obligation to pay those wages and to comply with the FLSA. *See* Section II(E), *infra.*

Moreover, the testimony of Goryn and Krawczynski demonstrates that Kaszycki was fully aware of *his* obligation to pay the employees, *see* Tr. at 33, 73. Indeed, in November 1980, after the job was over, Kaszycki paid to Krawczynski the regular time wages he owed him for work on the Bonwit Teller job. *See* Tr. at 88. This payment is hardly consistent with the argu-

ment that defendants were no longer responsible for paying the employees' wages.

The Court also rejects defendant Kaszycki's claim that the testimony of the employees shows that defendants were "making every attempt possible to meet the payroll." Letter Memorandum of George F. Aney at 1 (March 13, 1984). Rather the evidence establishes that some employees quit after not being paid for long periods, that the employees consequently engaged in strikes and forms of protests for nonpayment of wages, and that others believed Kaszycki was not acting in good faith with respect to the payment of their wages.

## II

### CONCLUSIONS OF LAW

#### A. *General Issues*

The Court has jurisdiction over this action pursuant to sections 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c) & 217. The Court has personal jurisdiction over both defendants based on residency and the fact that each has done business in the state of New York.

Kaszycki & Sons is an "enterprise" within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), and an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of section 3(s)(1) and (4) of the Act, 29 U.S.C. § 203(s)(1) & (4).

■ Defendants are both "employers" within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d). *See, e.g., Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194–95 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983); *Marshall v. Sam Dell's Dodge Corp.,* 451 F.Supp. 294, 296 (N.D.N.Y. 1978). Kaszycki, because he was president of the company and exercised virtually complete control over it, is personally liable for any amounts owed the employees due to any FLSA violation. *See, e.g., Sabine Irrigation, supra,* 695 F.2d at 194–95; *see also Donovan v. Sovereign Security, Ltd.,* 726 F.2d 55, 59 (2d Cir.1984); *cf. Falk v.*

*Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973) (noting the "expansiveness" of the FLSA definition of "employer"); *United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487 (2d Cir. 1960) (holding both corporation and individual officers liable for FLSA violations). The persons listed in Appendix A were all employees of defendants within the meaning of section 3(e) of the Act, 29 U.S.C. § 203(e).

■ The Court notes that the FLSA is to be liberally construed in favor of its intended beneficiaries. *See, e.g., Corning Glass Works v. Brennan,* 417 U.S. 188, 208, 94 S.Ct. 2223, 2234, 41 L.Ed.2d 1 (1974); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 461 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

#### B. *Failure to Keep Adequate Records*

Section 11(c) of the FLSA, 29 U.S.C. § 211(c), requires as follows:

> Every *employer* subject to any provision of this chapter or of any order issued under this chapter shall *make, keep, and preserve such records of the persons employed by him and the wages, hours, and other conditions and practices of employment maintained by him,* and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder. (emphasis added)

Section 15(a)(5), 29 U.S.C. § 215(a)(5), makes it unlawful to violate section 11(c). While no particular form or order of recordkeeping is mandated by the statute or regulations, the employer is required to make and maintain certain records. *Id.; see* 29 C.F.R. § 516.1(a).

The regulations set forth in 29 C.F.R. § 516.2(a) require these records to contain information with respect to, *inter alia,* name and address of each employee, occupation in which the individual is employed,

rate of pay, hours worked each work day and total hours for each workweek, and both total wages due and total wages paid for regular time and overtime. Payroll records are to be preserved by the employer for three years. 29 C.F.R. § 516.5. Employment, earnings, and wage rate records are to be preserved for two years. *Id.* at § 516.6(a).

These records are to be maintained by the employer at the place of employment or central recordkeeping office, and are to be available for Department inspection on seventy-two hours notice. *Id.* at § 516.7. Defendants' failure to keep company records in compliance with the regulations with respect to these employees clearly constitutes a violation of sections 11(c) and 15(a)(5). The records kept by Goryn and Krawczynski were not corporate records and were not in the possession of the employer, *cf. Klinghoffer, supra,* 285 F.2d at 490; therefore they do not satisfy the requirements of the Act. Even if they were company records, they failed to contain all of the information required by the FLSA and relevant regulations.

■ This failure by defendants to keep the required records with respect to the employees has an impact on the proof required of plaintiff. In *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 *reh'g denied,* 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946), the Supreme Court stated that where an employer does not keep accurate or adequate records of employee hours and wages, plaintiff, in an action to recover wages due employees, carries his burden of proof by producing "sufficient evidence to show the amount and extent of ... [uncompensated] work as a matter of just and reasonable inference." *Id.* at 687, 66 S.Ct. at 1192. The burden then shifts to the employer to rebut, or to show the inference is not reasonable. If the employer fails to meet this burden the court may award the damages reasonably inferred, despite the fact that they are only approximate in amount. *Id.* at 687–88, 66 S.Ct. at 1192. *See also Donovan v. Sovereign Security,*

*Ltd.,* (CCH) 94 Lab.Cas. ¶ 34,219, at 44,732 (E.D.N.Y. April 28, 1982), *amended on other grounds, Order,* 81 Civ. 0615 (E.D.N.Y. March 9, 1983), *amendment rev'd,* 726 F.2d 55 (2d Cir.1984); *Leisten v. Multi-Systems, Inc.,* (CCH) 37 Lab.Cas. ¶ 65,425, at 66,489 (S.D.N.Y. May 4, 1959). In view of defendants' failure to keep and maintain the records required that rule is applicable here.

*Anderson* has been interpreted to allow damage awards for FLSA violations to a group of employees where only some of those employees testified as to hours worked and wages paid, the overall damage award being reasonably inferred. *See, e.g., Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 472–73 (11th Cir.1982); *Brennan v. General Motors Acceptance Corp.,* 482 F.2d 825, 829 (5th Cir.1973); *Sovereign Security, Ltd., supra,* 94 Lab. Cas. at 44,733.

■ Therefore, while not all of the employees were deposed or interviewed, the Court finds, as discussed *infra* at Sections II(C) and (D), that the evidence is sufficient to establish a pattern of FLSA violations by defendants with respect to payment of both regular and overtime wages, and that any damages due employees for these violations may be reasonably inferred from the information in evidence before this Court.

### C. *Failure to Pay Minimum Wage*

Section 6(a) of the FLSA, 29 U.S.C. § 206(a), provides:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

\*       \*       \*       \*       \*       \*

(1) .... not less than $3.10 an hour during the year beginning January 1, 1980,

...

Section 15(a)(2) of the FLSA, 29 U.S.C. § 215(a)(2), makes it unlawful for any per-

son including a corporation to violate section 6(a).

While defendants contracted to pay the employees at a higher rate of pay than the minimum wage of $3.10 an hour, the evidence demonstrates that defendants did not in fact regularly pay the employees at the agreed rate, and further, that the amounts defendants did pay did not even always satisfy the minimum wage requirement. Therefore, while the minimum wage may have been paid to some employees for some workweeks, during other workweeks from January to June 1980 defendants violated the minimum wage provision with respect to at least every employee listed in Appendix A. *See Sam Dell's Dodge, supra,* 451 F.Supp. at 302–03; *cf. Klinghoffer, supra,* 285 F.2d at 490. The fact that defendants may have intended to pay the employees at some future date, or that some employees might have acquiesced, albeit grudgingly, to deferred payment, has no bearing on the fact that the statute was violated. *See Klinghoffer, supra,* 285 F.2d at 491; *cf. Hodgson v. A.W. Crossley, Inc.,* 365 F.Supp. 1131, 1134 (S.D.N.Y.1973).

Because defendants have failed to produce any evidence to challenge plaintiff's calculations of hours worked and wages due, under the rationale of *Anderson* and cases following it, the Court finds that the evidence produced by plaintiff, consolidated in P.Ex. 38, is sufficient to establish the number of hours worked and the amount of regular-time wages the defendants owe each employee.

D. *Failure to Pay Overtime Compensation*

Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires that:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce ..., or is employed in an enterprise engaged in commerce ..., for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Section 15(a)(2) of the Act, 29 U.S.C. § 215(a)(2), makes violation of section 7(a) unlawful. Defendants have not established that any exception to section 7 applies in this case. *See, e.g., Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Donovan v. Carls Drug Co.,* 703 F.2d 650, 652 (2d Cir.1983).

In *Klinghoffer, supra,* the Second Circuit made clear that while the agreed rate of pay could be disregarded for purposes of determining whether a section 6(a) minimum wage violation had occurred, for purposes of section 7(a) overtime hours must be compensated at one and one-half times the regular, agreed rate rather than the minimum wage rate. 285 F.2d at 491. *See also Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 40–42, 65 S.Ct. 11, 13–14, 89 L.Ed. 29 (1944).

Defendants have produced no evidence to show that they compensated the non-union employees at one and one-half times their regular rate of pay for hours worked in excess of forty hours in any workweek. The testimony of various employees, the records of Goryn and Krawczynski, and the findings by Dondzil make clear that there was no provision for overtime compensation in any amount for *any* of these employees. Once again, defendants offered no evidence to rebut or challenge plaintiff's proof with respect to the hours worked by the employees, or the fact that no overtime compensation was paid. And as noted above with respect to regular wages, *supra* at Section II(C), any intent by defendants to pay overtime compensation at some future date does not excuse present violations of the Act. *See, e.g., Klinghoffer, supra,* 285 F.2d at 491; *A.W. Crossley, supra,* 365 F.Supp. at 1134. Therefore, the Court concludes that defendants violated sections 7(a) and 15(a)(2), and are liable to the employees for overtime compensation in the amounts set forth in P.Ex. 38.

**E.** *Willfulness of the Sections 6 and 7 Violations*

Pursuant to section 6(a) of the Portal-to-Portal Act of 1947, 29 U.S.C. § 255(a), plaintiff's claims pursuant to sections 6 and 7 of the FLSA are barred by the statute of limitations unless defendants' FLSA violations were "willful." [12] A willful violation occurs where either (1) an employer knows that his business is subject to the FLSA, and the employer's practices do not conform to the FLSA requirements, *e.g., Carls Drug Co., supra,* 703 F.2d at 652, *or* (2) the employer acts with reckless indifference to the Act, *e.g., Klinghoffer, supra,* 285 F.2d at 492. There is no requirement that an employer be aware that it has violated a specific provision of the FLSA, *Carls Drug, supra,* 703 F.2d at 652. In fact, "complete ignorance" on the part of an employer as to the fact that its practices violate the Act is no defense. *Id.; Brennan v. Heard,* 491 F.2d 1, 3 (5th Cir. 1974). All that is required is that the employer knew or had reason to know that it was or might have been subject to the FLSA. *E.g., Marshall v. Erin Food Services, Inc.,* 672 F.2d 229, 231 (1st Cir.1982); *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139, 1142 (5th Cir.1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972); *Sam Dell's Dodge, supra,* 451 F.Supp. at 305. There is no "good faith" defense to section 255(a) violations. *E.g., Carls Drug, supra,* 703 F.2d at 652–53.

It is clear that defendants knew or had reason to know that Kaszycki & Sons was or might be subject to the FLSA. The Court has already found that defendant Kaszycki was or should have been aware of the FLSA requirements involved herein. This is especially apparent since defendants paid the union employees regular and overtime wages in compliance with the Act. The Court has also concluded that the practices of defendants were in violation of the FLSA. As in *Klinghoffer, supra,* 285 F.2d at 492, defendant Kaszycki knew wages were not being paid, and any willfulness on his part may be imputed to the corporate defendant. Therefore, the Court finds that defendants' violations were willful within the meaning of section 6(a) of the Portal-to-Portal Act.

Defendants argue that the evidence demonstrates that any violation of the FLSA was not willful on their part because control over any funds received by defendants in connection with the demolition job was taken away by Trump. However, as noted above in Section I, the Court finds that the evidence does not support the conclusion that defendants had no control over payment of wages to these employees. At most it suggests that defendants did not receive sufficient money under the contract to meet the payroll. This does not take control away from defendants, nor does it absolve defendants of their obligation to satisfy the requirements of the FLSA. Defendants have cited no authority, and the Court has found none, that says an employer is relieved of the mandates of the FLSA simply because that employer has insufficient funds to meet those requirements. Defendants also argue that the violations were not willful because there was "no embezzlement of funds or other wrong-doing" by defendants. *See* Letter Memorandum of George F. Aney at 2 (March 13, 1984). However, wrongdoing of that nature is not required for a finding of willfulness.

Therefore, because the defendants willfully violated the minimum wage and over-

---

**12.** 29 U.S.C. § 255(a) provides, in pertinent part:

> Any action …, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act …—
>
> · (a) … may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

The actions complained of herein occurred from January to June of 1980. The complaint was filed on May 20, 1982. Therefore, unless the Court finds the FLSA violations to have been willful, any violation occurring before May 20, 1980 would be barred by the statute of limitations.

time compensation provisions of the FLSA, the action is not barred by the statute of limitations.

### F. *Liquidated Damages*

■ Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that any employer who violates either section 6 or 7 of the Act shall be liable to the affected employee in the amount of unpaid compensation, *"and in an additional equal amount as liquidated damages." Id.* (emphasis added). Pursuant to section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, if the employer proves to the satisfaction of the Court that (1) the acts or omissions giving rise to minimum wage or overtime compensation violations were in good faith, *and* (2) that the employer had reasonable grounds for believing that the acts or omissions were not in violation of the FLSA, the Court may, in its discretion, decide not to award any liquidated damages, or to reduce the amount of liquidated damages. *Id.; see, e.g., Marshall v. Brunner,* 668 F.2d 748, 753 (3d Cir.1982); *Addison v. Huron Stevedoring Corp.,* 96 F.Supp. 142, 166–68 (S.D. N.Y.1950), *modified on other grounds,* 204 F.2d 88 (2d Cir.), *cert. denied,* 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384 (1953); *Leisten, supra,* 37 Lab.Cas. at 66,490. The employer bears the burden of persuading the Court that both good faith and a reasonable belief exist. *See, e.g., Brunner, supra,* 668 F.2d at 753–54; *Reeves v. International Telephone and Telegraph Corp.,* 616 F.2d 1342, 1352–53 (5th Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981); *Donovan v. Brandst Realty Corp.,* 82 Civ. 7651 (WCC), slip op. at 2 (S.D.N.Y. July 5, 1983).

■ In these circumstances, "good faith" pursuant to section 11 of the Portal-to-Portal Act requires at least an honest intention to ascertain what the Fair Labor Standards Act requires and to comply with it. *Compare Addison, supra,* 204 F.2d at 93 (dictum) *with EEOC v. Home Insurance Co.,* 672 F.2d 252, 266 (2d Cir.1982). *See also Brunner, supra,* 668 F.2d at 753; *Beebe v. United States,* 640 F.2d 1283, 1295 (Ct.Cl.1981). "Reasonable belief" is an objective standard. *E.g., Addison supra,* 204 F.2d at 93; *Brunner, supra,* 668 F.2d at 753; *Beebe supra,* 640 F.2d at 1295. As with willfulness, ignorance is no defense to a claim for liquidated damages. *See, e.g., Brunner, supra,* 668 F.2d at 753; *cf. EEOC, supra,* 672 F.2d at 266.

■ Because the Court has found that defendants knew or reasonably should have known of the FLSA requirements, and failed to comply with them, it is clear they have not demonstrated that they acted in good faith and with reasonable belief that they were not violating the Act. Even assuming they were not aware of the FLSA requirements, defendants introduced no evidence that they made any good faith effort to ascertain what the FLSA requires or to comply with it. Under these circumstances, liquidated damages will be awarded.

Defendants argue that liquidated damages cannot be awarded because these violations were not "willful." This requirement does not appear in section 216, section 260, or the caselaw under either statute. The Second Circuit has made clear that the willfulness requirement of 29 U.S.C. § 255(a), which goes to the issue of the statute of limitations, is different from the good faith requirement of 29 U.S.C. § 260, which goes to liquidated damages. *See Carls Drug, supra,* 703 F.2d at 652–53. Furthermore, even if willfulness were a prerequisite to awarding liquidated damages, that requirement would be satisfied as the Court has concluded that the violations were willful. *See* Section II(E), *supra.*

### G. *Injunction Against Future Violations*

■ Pursuant to section 17 of the FLSA, 29 U.S.C. § 217, because the Court has held that defendants violated 29 U.S.C. § 215(a)(2), plaintiff is entitled to an injunction enjoining defendants from any future violation of the minimum wage, overtime compensation, and recordkeeping require-

ments of the FLSA, or any provision of 29 U.S.C. § 215. *See, e.g., Sabine Irrigation, supra,* 695 F.2d at 196; *Sovereign Security, Ltd., supra,* 94 Lab.Cas. at 44,734; *Marshall v. Burger King Corp.,* 504 F.Supp. 404, 411–12 (E.D.N.Y.1980), *amended,* 509 F.Supp. 353 (E.D.N.Y.1981), *aff'd,* 675 F.2d 516 (2d Cir.1982); *Sam Dell's Dodge, supra,* 451 F.Supp. at 305–06. This injunction may validly issue even if present violation of the FLSA has ceased. *See, e.g., Walling, supra,* 323 U.S. at 43; *Sovereign Security, Ltd., supra,* 94 Lab.Cas. at 44,734; *Marshall v. Coach House Restaurant, Inc.,* 457 F.Supp. 946, 953 (S.D.N.Y.1978); *Sam Dell's Dodge, supra,* 451 F.Supp. at 305–06.

Defendants have cited no reason why the Court should not issue the injunction. They have made no representation to this Court that they will not violate the Act in the future. The evidence demonstrates that violations similar to those in the instant action also occurred with respect to other jobs defendant Kaszycki was involved in, involving some of these same employees. Moreover, a consent judgment entered into by defendant Kaszycki in another action, *see* P.Ex. 41, and which refers to another company owned by Kaszycki, does not preclude this Court from enjoining defendants as a result of the instant violations, and with respect to future violations not covered by that consent judgment.

## CONCLUSION

The Court finds in favor of plaintiff on all claims and orders as follows: (1) defendants are hereby ordered to pay to plaintiff, for the benefit of the employees listed in Appendix A, $254,523.59 in unpaid wages and overtime compensation, and $254,-523.59 as liquidated damages; and (2) defendants are hereby enjoined from future violations of 29 U.S.C. §§ 206(a), 207(a), 211(c), and 215(a).[13]

13. While plaintiff originally asked for pre-judgment interest on the unpaid wages and overtime compensation awarded, this request was withdrawn in plaintiff's post-trial papers, should the Court award liquidated damages. Therefore, the Court does not address the issue of interest.

## APPENDIX A

| EMPLOYEE NAME | AMOUNT DUE |
| --- | --- |
| Albo, Mieczyslaw | $ 1,380.00 |
| Bak, Szczepan | 172.00 |
| Baldachowski, Waldyslaw | 863.00 |
| Bar, Tadeusz | 5,950.00 |
| Biedrzycki, Zbigniew | 2,018.40 |
| Bieniasz, Stan | 1,140.00 |
| Bodzak, Zbigniew | 501.00 |
| Boksz, Piotr | 1,960.25 |
| Bogdan, Janusz | 2,104.30 |
| Bryla, Ryzard | 2,522.00 |
| Borusiewicz, Piotr | 99.00 |
| Charemski, Jan | 820.00 |
| Charytoniuk, Waclaw | 71.30 |
| Chlebicki, Adam | 438.00 |
| Chodkiewicz, Zygmunt | 833.95 |
| Choinski, Jozef | 106.95 |
| Chowski, Waclaw | 134.00 |
| Chojkowski, Jan | 3,665.00 |
| Cholewicki, Aleksander | 1,296.00 |
| Cholewinski, Marian | 1,652.00 |
| Chrzanowski, Lech | 540.00 |
| Ciborowski, Henryk | 161.20 |
| Cybula, Witold | 586.00 |
| Cymbalak, Micezyslaw | 1,205.00 |
| Czajka, Romualo | 185.00 |
| Czajka, Tadeusz | 799.00 |
| Czarnowski, Josef | 71.30 |
| Czarnowski, Kazimierz | 244.00 |
| Dabrowski, Josef | 1,511.00 |
| Dabrowski, Stanislaw | 840.00 |
| Dawidowski, Wojciech | 1,220.00 |
| Debnicki, Stan | 46.00 |
| Domzalski, Miecz | 285.20 |
| Drabik, Witold | 3,409.00 |
| Druzkawiecki, Marian | 2,983.00 |
| Duba, Edward | 136.00 |
| Dziewa, Mierczslaw | 536.00 |
| Gabrysiak, Pawel | 927.60 |
| Garbowski, Aleks | 35.65 |
| Gasowski, Zenon | 249.55 |
| Gemzik, Eugeniusz | 35.65 |
| Golas, Henryk | 341.00 |
| Golda, Stan | 830.00 |
| Gorlewski, Piotr | 648.00 |
| Gorski, Bolelaw | 733.00 |
| Gorski, Tadeusz | 178.25 |
| Goryn, Zbigniew | 10,815.00 |
| Gorzelski, Zenon | 35.65 |
| Grabowiecki, Miecz | 356.00 |
| Gradzki, Edward | 796.00 |
| Grodski, Henry K. | 106.95 |
| Grodzki, Jerzy | 886.70 |
| Gutka, Zbigniew | 1,211.95 |

| EMPLOYEE NAME | AMOUNT DUE | EMPLOYEE NAME | AMOUNT DUE |
|---|---|---|---|
| Hardek, Andrzei | $ 106.95 | Lokaj, Jadeusz | $ 3,530.00 |
| Jakubowski, Marek | 1,061.00 | a/k/a/ Marek, Bronislaw | |
| Jasionowicz, Tadeusz | 560.60 | Luba, Zozislaw | 3,166.80 |
| Jung, Jerzy | 699.60 | Lukaszczyk, Stanislaw | 6,387.70 |
| Jurek, Wlasylaw | 944.00 | Majewski, Marian | 379.00 |
| Kaczynski, Franciszek | 342.50 | Makowski, Herzyk | 566.00 |
| Kalinowski, Franciszek | 3,354.00 | Malek, Stanislaw | 786.00 |
| Kalinowski, Janusz | 742.70 | Mariowski, Jan | 71.30 |
| Kamieniowski, Witold | 106.95 | Maksimek, Josef | 178.25 |
| Kaminski, Jan | 1,323.00 | Mikolajdzyk, Zozislaw | 889.40 |
| Karas, Franciszek | 3,643.25 | Milewski, Josef | 71.30 |
| Karas, Wladyslaw | 4,627.00 | Miszczak, Jacey | 1,610.00 |
| Kazanecki, Henry | 35.65 | Mlynarski, Boleslaw | 3,004.78 |
| Kielar, Eugene | 678.00 | Mocarski, Henry | 86.00 |
| Klaczynski, Czeskw | 516.00 | Mocarski, Waclaw | 1,161.00 |
| Klewinowski, Josef | 878.00 | Moczyolowski, Josef | 739.00 |
| Kmita, Eugeniusz | 35.65 | Modzelewski, Jan | 997.00 |
| Kochanowski, Tadeusz | 640.00 | Moroz, Francizek | 1,405.00 |
| Kolakowski, Henry K. | 278.00 | Moscicki, Witold | 1,863.00 |
| Kolakowski, Marion | 4,329.95 | Mrowiec, Adam | 1,387.25 |
| Konopka, Tadeusz | 1,027.00 | Mucha, Jozef | 1,787.50 |
| Konopka, Wlad | 168.00 | Nalera, Julian | 6,578.00 |
| Kordulski, Czeslaw | 441.00 | Nikonowicz, Zozislaw | 849.00 |
| Kordulski, Waclaw | 3,226.00 | Nowaczek, Franciszek | 207.00 |
| Kotowski, Stanislaw | 1,075.00 | Nowak, Wlodzimierz | 1,248.00 |
| Kowalewski, Antoni | 1,259.25 | Okurowski, Janusz | 397.00 |
| Kowalewski, Stan | 187.00 | Orlowski, Wladyslaw | 71.30 |
| Kozak, Wotciech | 2,506.40 | Ostrowski, Josef | 168.00 |
| Kozicki, Kazimierz | 232.50 | Ostrowski, Tadeus | 3,537.00 |
| Kozlowski, Maciej | 1,354.00 | Parkowski, Wladyslaw | 106.95 |
| Kozlowski, Mieczyslaw | 660.00 | Pasternak, Jan | 810.00 |
| Kozlowski, Zbigniew | 571.00 | Pasternak, Marek | 4,700.00 |
| Krasinski, Jozef | 3,801.00 | Patkowski, Marek | 1,249.00 |
| Krawczynski, Bogdan | 1,032.00 | Patia, Marian | 258.00 |
| Kropiewnick, Franciszak | 464.00 | Pawalec, Jan | 950.90 |
| Kropiewnicki, Mieczyslaw | 538.00 | Perkowski, M. | 1,085.00 |
| Krystel, Jan | 1,519.00 | Piotrowicz, Wieslaw | 156.00 |
| Kulczyk, Boleslaw | 1,313.25 | Piotrowski, Mieczyslaw | 5,091.75 |
| a/k/a Mikina, Mieczyslaw | | Pedlowski, Stanislaw | 801.00 |
| Kulesza, Jan | 327.00 | Pekal, Boleslaw | 240.00 |
| Kutylowski, Tadeuz | 35.65 | Pielack, Pawel | 494.00 |
| Kuznicki, Jan | 196.00 | Pietka, Waldemar | 957.00 |
| Lapinski, Eugeniusz | 512.00 | Pilis, Edward | 1,040.00 |
| Lapinski, Miecz | 216.00 | Piszczatowski, Josef | 236.00 |
| Lapinski, Walerian | 249.55 | Pogorzelski, Piotr | 71.30 |
| Laszczkowski, Eugeniusz | 1,105.00 | Ponichtera, Waclaw | 4,126.00 |
| Ledwold, Stanislaw | 532.00 | Poplowski, Jan | 219.00 |
| Lesniewski, Stanislaw | 897.00 | Ratner, Josef | 242.00 |
| Lesniewski, Tadeusz | 806.40 | Rogowski, Edward | 238.00 |
| Lesniewski, Wieslaw | 1,716.00 | Rosckowski, S. | 897.00 |
| Lemanski, Alfred | 211.55 | Roskowski, Tadeusz | 4,026.00 |
| Lipinski, Albin | 1,668.00 | Roszkowski, Tadeusz | 244.00 |
| Lisowski, Andrzet | 498.95 | Rybakowicz, Waldemar | 955.00 |
| Lojek, Aloizy | 3,892.00 | Ryczko, Stanislaw | 94.00 |
| | | Rzeczkowski, Tadeusz | 1,678.00 |

| EMPLOYEE NAME | AMOUNT DUE |
|---|---|
| Rzepczynski, Josef | $ 288.00 |
| Sadowski, Wieslaw | 1,488.00 |
| Salach, Maciei | 353.40 |
| Saraciewski, Stefan | 704.00 |
| Skorupski, Roman | 341.00 |
| Skrodzki, Eugeniusz | 1,052.00 |
| Skubisz, Witold | 2,527.34 |
| Suwowski, Wieslaw | 35.65 |
| Socha, Jozef | 1,483.30 |
| Sokolowski, Waclaw | 4,015.00 |
| Sosler, Jozef | 1,612.50 |
| Sosnowski, Kasimier | 4,079.69 |
| Stykala, Leszek | 1,364.00 |
| Styputkowski, Tad | 106.95 |
| Suchocki, Jan | 35.65 |
| Sudol, Edward | 546.00 |
| Sulewski, Adam | 3,849.00 |
| Supinski, Tadeusz | 70.00 |
| Swidzinski, Wladyslaw | 851.00 |
| Swies, Marion | 726.00 |
| Swieczkowski, Jan | 1,270.00 |
| Swieczkowski, Tadeusz | 291.00 |
| Szatrat, Bronislaw | 979.00 |
| Szczepanek, Joachim | 1,768.75 |
| Szczutko, Jansusz | 6,237.00 |
| Szerszen, Marek | 798.00 |
| Szlenk, Zozislaw | 275.00 |
| Szulborski, Josef | 206.00 |
| Szymanski, Zosilaw | 116.25 |
| Tabor, Jan | 1,682.00 |
| Targowski, Tadeusz | 48.05 |
| Tarnowski, Henryk | 660.00 |
| Uminski, Waclaw | 765.00 |
| Wattas, Ryszard | 314.00 |
| Wasilewski, Jaroslaw | 738.00 |
| Welc, Wieslaw | 8,070.00 |
| Wesolowski, Wdwik | 938.00 |
| Wierzchowski, Waldemar | 18.60 |
| Wisniewski, Zdzislaw | 858.00 |
| Wojoyla, Wladyslaw | 313.20 |
| Wottak, Stanislaw | 1,743.00 |
| Woloszyn, Stanislaw | 874.00 |
| Wolski, Josef | 35.65 |
| Wroblewski, Kazimer | 508.00 |
| Wrochniak, Stanislaw | 219.65 |
| Zorodowski, Henryk | 852.00 |
| Zorotkowski, Zbigniew | 3,412.35 |
| Zolkowski, Albin | 453.00 |
| Zygmunt, Zbigniew | 720.00 |
| **TOTAL AMOUNT DUE** | **$254,523.59** |